1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**
                                **DISTRICT OF NEVADA**
7

8    SCOTTIE RAY VAN NORT,            )        3:09-cv-00042-LRH (WGC)
                                      )
              Plaintiff,              )
9                                     )
          vs.                         )
10                                    )
     GLEN FAIR, et. al.,              )
11                                    )
              Defendants.             )
12   SCOTTIE RAY VAN NORT             )        3:09-cv-00109-LRH (WGC)
                                      )
13            Plaintiff,              )
                                      )
14        vs.                         )
                                      )
15   RICK ASHER, et. al.,             )
                                      )
16   SCOTTIE RAY VAN NORT,            )        3:09-cv-00110-LRH (WGC)
                                      )
17            Plaintiff,              )
                                      )
18        vs.                         )        **REPORT & RECOMMENDATION**
                                      )        **OF U.S. MAGISTRATE JUDGE**
19   GLEN FAIR, et. al.               )
                                      )
20            Defendants.             )
                                      )
21   _____

22          This Report and Recommendation is made to the Honorable Larry R. Hicks, United

23   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

24   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

25   Defendants' Motion for Summary Judgment. (42 Doc. # 62.)[1] Plaintiff has opposed (42 Doc.

26

27          _____
            [1] Refers to the court's docket number.  For clarification, when the court is referring to a docket item in
28   Case 3:09-cv-00042-LRH (WGC) it will refer to the docket as "42 Doc. # X." For Case 3:09-cv-00109-LRH
     (WGC), it will refer to "109 Doc. # X," and for 3:09-cv-00110-LRH (WGC), it will refer to "110 Doc. # X."

1  # 81) and Defendants replied (42 Doc. # 82). After a thorough review, the court recommends

2  that Defendants' motion be granted in part and denied in part.[2]

3  ## I. BACKGROUND

4      Plaintiff Scottie Ray Van Nort (Plaintiff), is an inmate in custody of the Nevada

5  Department of Corrections (NDOC); however the events giving rise to this action took place

6  while Plaintiff was housed at the Carson City Detention Facility. (Pl.'s Am. Compl. (42 Doc.

7  # 16) at 1; Pl.'s Compl. (109 Doc. # 6) at 1; Pl.'s Am. Compl. (110 Doc. # 15) at 1.) Plaintiff is

8  proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C.

9  § 1983. (*Id.*)

10      On April 22, 2011, Case Nos. 3:09-cv-00042-LRH (WGC), 3:09-cv-00109-LRH (WGC),

11  and 3:09-cv-00110-LRH (WGC) were consolidated. (*See* 42 Doc. # 30.) These cases have a

12  combined twelve counts which survived screening: Counts 1 and 2 in 3:09-cv-00042-LRH

13  (WGC), Counts 7, 8, 12, 13, and 14 in 3:09-cv-00109-LRH (WGC), and Counts 2, 5, 7, 10, and

14  12 in 3:09-cv-00110-LRH (WGC). (*See* 42 Doc. # 15; 109 Doc. # 5; 109 Doc. # 26; 110 Doc.

15  # 14.) Defendants are Glen Fair, Clay Wall, Ken Furlong, Rudy Hindelang, David Ramsey, and

16  various Doe defendants. (*Id.*) Defendants Fair, Wall, and Furlong have moved for summary

17  judgment arguing that Plaintiff's remaining claims are barred by section 1983, and they are

18  entitled to qualified immunity. (42 Doc. # 62.)

19      The factual allegations of Plaintiff's remaining claims are set forth in detail below in the

20  court's analysis. At this juncture, the court would like to point out and clear up a few

21  inconsistencies in the Screening Order with respect to Plaintiff's Amended Complaint in 3:09-

22  cv-00110-LRH (WGC).

23  ### a. Count 12 in 3:09-cv-00110-LRH (WGC)

24      While the Screening Order states that Plaintiff may proceed with Counts 2, 7, and 12 (110

25  Doc. # 14 at 4-5), the court observes that the order to proceed with Count 12 was in error.

26  Counts 2 and 7 allege a due process violation related to violations of Carson City Detention

27  ---

28  [2] It should be noted that summary judgment is recommended as to all claims asserted against moving Defendants Fair, Wall, and Furlong, but not as to those claims asserted only against Doe defendants, who have not been identified, or against Defendants Hindelang and Ramsey, who have not moved for summary judgment.

Facility rules (110 Doc. # 15 at 10-11 16), while Count 12 relates to the conditions of confinement in a holding cell. (*Id.* at 20-21.) Count 12 is predicated on the allegations set forth in Count 11, which was dismissed with prejudice. (*See* 110 Doc. # 14 at 6, 8.) Moreover, Count 12 is analogous to Count 14 (110 Doc. # 15 at 23), which was also dismissed with prejudice. (*See* 110 Doc. # 14 at 6, 8.) Accordingly, the court suggests that the inclusion of Count 12 with those that may proceed was in error, and Count 12 should have been dismissed with prejudice for the reasons set forth with respect to Counts 11 and 14.

### b.  Count 10 in 3:09-cv-00110-LRH (WGC)

Count 10 only alleges that Defendants Fair and Wall subjected Plaintiff to conditions amounting to punishment on November 13, 2008. (110 Doc. # 15 at 19.)  In the Screening Order, the court stated that Plaintiff did not state a claim against Defendants Fair and Wall. (110 Doc. # 14 at 7:21-23.) Yet, the court allowed Count 10 to proceed. (*Id.* at 7:23.) The court suggests that this was in error, and Count 10 should have been dismissed with prejudice.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered

3

by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*  at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec.  Indus.  Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.  v.  Pac.  Elec.  Contractors*

4

1  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

2  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

3  that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

4  and allegations of the pleadings and set forth specific facts by producing competent evidence

5  that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

6      At summary judgment, a court's function is not to weigh the evidence and determine the

7  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

8  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

9  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

10 significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

11 omitted).

12                          **III. DISCUSSION**

13 **A.  Case 3:09-cv-00042-LRH (WGC)**

14      **1.  Count 1 (Defendants Fair, Wall, Furlong)**

15      In Count 1, Plaintiff challenges his conditions of confinement between June 3 and

16 June 27, 2008, under the Fourteenth Amendment, including the following: (1) being forced to

17 sleep on a mattress on the floor; (2) lighting; (3) exercise; (4) cleaning supplies; (5) laundry;

18 (6) showers; and (7) observation of him on the toilet. (42 Doc. # 1 at 6.)

19      Claims by pretrial detainees are analyzed under the Fourteenth Amendment's Due

20 Process Clause, which protects a pretrial detainee from punishment prior to adjudication of

21 guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979).

22 However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment'

23 in the constitutional sense[.]" *Id.* at 537.

24      Once the Government has exercised its conceded authority to detain a person
        pending trial, it obviously is entitled to employ devices that are calculated to
25      effectuate detention. Traditionally, this has meant confinement in a facility
        which, no matter how modern or how antiquated, results in restricting the
26      movement of a detainee in a manner in which he would not be restricted if he
        simply were free to walk the streets pending trial.
27 *Id.*

28      Loss of freedom of choice and privacy are inherent incidents of confinement in

5

1
2
3

> such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Id.*

4

A court must decide whether the condition is imposed "for the purpose of punishment

5

or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S.

6

at 538 (citation omitted).

7
8
9

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

10

*Id.* (citations omitted). The test is therefore whether a condition is "reasonably related to a

11

legitimate governmental objective." *Id.* at 539. This determination is to be made keeping in

12

mind that "[s]uch considerations are peculiarly within the province and professional expertise

13

of corrections officials, and, in the absence of substantial evidence in the record to indicate that

14

the officials have exaggerated their response to these considerations, courts should ordinarily

15

defer to their expert judgment in such matters." *Id.* at 540 (internal quotations and citations

16

omitted).  In *Bell*, the Supreme Court pointed out that "maintaining institutional security and

17

preserving internal order and discipline are essential goals that may require limitation or

18

retraction of the retained constitutional rights of both convicted prisoners and pretrial

19

detainees." *Id.* at 546. "Prison administrators therefore should be accorded wide-ranging

20

deference in the adoption and execution of policies and practices that in their judgment are

21

needed to preserve internal order and discipline and to maintain institutional security." *Id.* at

22

547 (citations omitted).

23

While pretrial detainees' rights are grounded in the Due Process Clause of the

24

Fourteenth Amendment, courts borrow from Eighth Amendment jurisprudence to analyze

25

their rights. *See e.g., Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008); *Lolli*

26

*v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003); *Or. Advocacy Ctr. v. Mink*, 322

27

F.3d 1101, 1120 (9th Cir. 2003); *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir.

28

2002); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Carnell v. Grimm*, 74 F.3d 977,

979 (9th Cir. 1996); *Anderson v. County of Kern*, 45 F.3d 1310, 1312, 1313 (9th Cir. 1995); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1414-15 (9th Cir. 1986). Pretrial detainees' due process rights are at least as great as a convicted prisoner's Eighth Amendment rights. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Or. Advocacy Ctr.*, 322 F.3d at 1120 ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights…").

Thus, at minimum, the Eighth Amendment requires that jail officials ensure that inmates receive adequate food, clothing, shelter, sanitation and medical care and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To violate the Eighth Amendment, the condition in question "must be, objectively, 'sufficiently serious,'" meaning that it "result[s] in the denial of 'the minimal civilized measure of life's necessities," and it must amount to "deliberate indifference," which means that the official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" *Id.* at 834-35, 837.

### a. Bed

Plaintiff alleges that from June 3 through June 17, 2008, he was housed in a temporary holding cell without a bed, and instead had only a mattress on the floor. (Doc. # 15 at 6.)

Defendants contend that during the relevant time period at Carson City Detention Facility, Plaintiff was classified as a maximum security inmate due to his criminal history, history of lying to staff and rule violations. (42 Doc. # 62-1 (Ex. 21) (Decl. of Glenn Fair) at ¶ 4.) Defendants claim that Plaintiff chose to place his mattress on the floor, despite the fact that he could have placed it on a raised concrete platform in the cell. (*Id.* at ¶ 5.)

In response, Plaintiff contends that he was forced to sleep on the floor, next to a toilet. (42 Doc. # 81 at 42 ¶ 10.) He also asserts that the platform Defendant Fair speaks of was designed for sitting, and was not large enough to accommodate a mattress. (42 Doc. # 81 at 12.)

Plaintiff contends he was deprived of a bed, but admits that he did have a mattress on the floor. The total length of time Plaintiff alleges he was forced to sleep on a mattress on the

floor is approximately fifteen (15) days.  Even viewing the evidence in Plaintiff's favor, as the court must on summary judgment, the court finds that requiring Plaintiff to sleep on a mattress on the floor of his cell for fifteen (15) days does not violate the Eighth Amendment or amount to punishment under the Fourteenth Amendment. (*See e.g. Centeno v.  Wilson*, 2011 WL 836747 at * 3 (E.D. Cal.  March 4, 2011) (finding that deprivation of a blanket and mattress for seven (7) days did not amount to an Eighth Amendment violation).)

Accordingly, summary judgment should be granted as to this claim.

### b. Lighting

Plaintiff alleges that the lighting in his cell was never dimmed, and that the cell contained no external windows. (109 Doc. # 15 at 6.)

Defendants claim that the lights in Plaintiff's cell were dimmed during the nighttime hours. (42 Doc. # 62 at 33-34.) Defendants do acknowledge that there was some degree of illumination of Plaintiff's cell during the nighttime hours, which is necessary to maintain security. (*Id.* at 34 n.  11.)

Plaintiff claims that the lighting in the cell was never dimmed, and only had an on-off capability. (42 Doc. # 81 at 11-12.) His affidavit states that the two (2), four (4) foot florescent lights in his cell were never dimmed. (42 Doc. # 81 at 42 ¶ 11.)

In Plaintiff's grievance, he stated that the lights in the cell block were not *turned out* until 1:00 a.m., and then were *turned back on* at 3:30 a.m. (42 Doc. # 81-2 at 9; Doc. # 82-26 (Ex.  20).)  The response to the grievance stated that all lights are turned off at graveyard or before, and a night light will then be turned on. (*Id.*)  It goes on to state that all inmates are woken up at approximately 4:00 a.m. for pill call and to clean the pod and cells and to get ready for the morning feeding. (*Id.*) After feeding, inmates may return to their cells.  (*Id.*)

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Keenan v.  Hall*, 83 F.3d 1083, 1090 (9th Cir.  1996), *as amended by* 13 F.3d 1318 (9th Cir.  1996) (internal quotation marks and citation omitted). "Moreover, '[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination.'" *Id.* (citation omitted).

8

1    Plaintiff's claim that the lights in his cell were never dimmed is contradicted by the

2    statement in his grievance that the lights were turned out at 1:00 a.m. and then turned back on

3    at 3:30 a.m. While Plaintiff states that the lights in his cell could not be dimmed, it is clear from

4    his grievance that they were, at the least, turned off for a period of time. Defendants have

5    proffered a penological justification for requiring some illumination during the night, *i.e.,*

6    maintaining institutional security, and there is no indication that this is an exaggerated

7    response. The court finds that requiring some illumination during night time hours was not

8    done with an express intent to punish; rather, it was to maintain the security and safety of the

9    institution. Nor has Plaintiff provided any evidence indicating that it caused a risk to his health.

10   Accordingly, summary judgment should be granted as to this claim.

11            **c. Exercise**

12            Plaintiff alleges that he was denied regular exercise outside of his cell and was prohibited

13   from exercising in his cell, causing muscular atrophy. (42 Doc. # 15 at 6.)

14            Defendants claim that Plaintiff was offered exercise time on June 7, 8, 13, 15, and 16,

15   2008; and was not prohibited from exercising in his cell. (42 Doc. # 62 at 33-34.)

16            Plaintiff does not dispute that he was offered exercise time on June 7, 8, 13, 15, and 16,

17   2008. (42 Doc. # 81.) Instead, Plaintiff argues that he was not permitted one (1) hour of

18   outdoor recreation per day. (42 Doc. # 81 at 13, 42 at ¶ 12.)

19            "There is substantial agreement among the cases in this area that some form of regular

20   exercise is extremely important to the psychological and physical well being of the inmates[,]"

21   and the deprivation of such may run afoul of the Eighth Amendment. *Keenan v. Hall*, 83 F.3d

22   1083, 1090-91 (9th Cir. 1996)*, as amended by* 135 F.3d 138 (9th Cir. 1998) (internal quotation

23   marks omitted) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). In *Spain v.*

24   *Procunier*, the Ninth Circuit concluded that deprivation of outdoor exercise for a period of

25   years contravened the Eighth Amendment. *Spain*, 600 F.2d at 199-200. More temporary

26   deprivations of outdoor exercise have been found not to violate the Eighth Amendment. *See,*

27   *e.g., Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2011), *cert. denied*, 131 S.Ct. 1465

28   (2011) (temporary denial of outdoor exercise not a substantial deprivation), *May v. Baldwin*,

1   109 F.3d 557, 565 (9th Cir. 1997) (finding that denial of opportunity to exercise for twenty-one

2   (21) days did not run afoul of the Eighth Amendment); *LeMaire v. Maass*, 12 F.3d 1444, 1457

3   (9th Cir. 1993).

4        The court finds that Plaintiff was afforded the opportunity for outdoor exercise on at

5   least five (5)  occasions over a fifteen (15) day period of time.  This does not run afoul of the

6   Eighth Amendment and does not amount to punishment under the Fourteenth Amendment.

7   Accordingly, summary judgment should be granted as to this claim.

8                    **d. Cleaning supplies/cleaning of cell**

9        Plaintiff alleges that he was refused access to cleaning supplies and/or cleaning his cell.

10  (42 Doc. # 15 at 6; Doc. # 81 at 13, 42 at ¶ 13.)

11       Defendants admit that Plaintiff was not given free access to cleaning supplies because

12  of his custody status, but contend his cell was cleaned on June 13, 2008. (Doc. # 62 at 34.)

13       Plaintiff provides no further allegations or evidence to demonstrate how the failure to

14  clean his cell except for once over a period of fifteen days amounts to punishment or a violation

15  of the Eighth Amendment.  In other words, Plaintiff does not provide any evidence establishing

16  a deprivation denying "the minimal civilized measure of life's necessities." *See Rhodes v.*

17  *Chapman*, 452 U.S. 337, 347 (1981). The fact that his cell was cleaned once over a fifteen (15)

18  day period, standing alone, is not sufficient. Without evidence of how this denied him of life's

19  civilized necessities or caused a risk to his health or safety, the court cannot conclude that these

20  allegations rise to the level of a constitutional deprivation under the Eighth Amendment, or

21  punishment under the Fourteenth Amendment.

22       Therefore, Summary judgment should be granted as to this claim.

23                             **e. Laundry**

24       Plaintiff alleges that he was only permitted to launder his one set of clothes once a week.

25  (42 Doc. # 15 at 6.)

26       Defendants argue that  all inmates have their clothes, towels, and bed linens exchanged

27  for washing once a week. (42 Doc. # 62 at 34.)

28       "The denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker*

1   *v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1246

2   (9th Cir. 1982)), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472

3   (1995). Plaintiff does not present evidence that the policy of laundering clothing once a week

4   caused him any harm, or caused a risk to his health. The court cannot conclude that laundering

5   clothing once a week violates the Eighth Amendment or amounts to punishment. Accordingly,

6   summary judgment should be granted as to this claim.

7              **f. Showers**

8         Plaintiff alleges that he was refused access to regular showers. (42 Doc. # 15 at 6.)

9         Defendants contend that Plaintiff had shower access on June 7, 8, 13, 15, and 16, 2008.

10  (*Id.*)

11        Plaintiff does not dispute that he had shower access on June 7, 8, 13, 15, and 16, 2008;

12  rather, he maintains that he was deprived of a daily shower. (Doc. # 81 at 13, 42 at ¶ 12.)

13        While the Ninth Circuit has not made any definitive determination as to how many

14  showers are required per week for inmates, it has certainly not held that daily showers are

15  required. One district court has held that the denial of showers for seven (7) days did not

16  amount to an Eighth Amendment violation. *See Centeno v. Wilson*, 2011 WL 836747 (E.D. Cal.

17  March 4, 2011). The Seventh Circuit's discussion of the topic is also instructive.

18        In *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988), the Seventh Circuit rejected

19  a provision for injunctive relief requiring three showers per week, stating:

20      No doubt Americans take the most showers per capita of any people in the
    history of the world, but many millions of Americans take fewer than three

21      showers (or baths) a week without endangering their physical or mental health,
    and abroad people as civilized and healthy as Americans take many fewer

22      showers on average, as every tourist knows...The importance of the daily shower
    to the average American is cultural rather than hygienic[.]

23  *Id.* at 1316.

24        Here, Plaintiff was offered the opportunity to shower on approximately five (5) out of

25  fifteen (15) days. The court simply cannot find this amounts to an Eighth Amendment violation

26  or that it constitutes punishment under the Fourteenth Amendment. Accordingly, summary

27  judgment should be granted as to this claim.

28  ///

### g. Observation of Plaintiff on the toilet

Plaintiff alleges that his toilet use was subject to casual observation, including by female inmates. (42 Doc. # 15 at 6.)

Defendants argue that any coincidental observation of Plaintiff while using the toilet was not a form or arbitrary punishment; instead, prison guards must be able to observe inmates in their cells to ensure institutional safety and security. (42 Doc. # 62 at 34.)

The court agrees with Defendants that any incidental observation of Plaintiff while using the toilet was not intended to punish, but was a result of the need for guards to be able to observe inmates in their cells to assure the safety and security of the institution. *See, e.g., Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) ("Being detained in a county jail necessarily involves being observed by the staff of the jail and the other detainees."); *see also Bell*, 441 U.S. at 537 ("Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility."). Therefore, summary judgment should be granted as to this claim.

In conclusion, summary judgment should be granted as to all claims in Count 1.

### 2. Count 2 (Defendants Wall, John Doe # 1, Sgt. Doe # 2)

In Count 2, Plaintiff alleges a due process claim in connection with a disciplinary proceeding instituted against him while incarcerated. (42 Doc. # 16 at 8-9.) Specifically, he asserts that he was not given fair notice of the rules and regulations governing his incarceration at Carson City Detention Facility, especially relating to disciplinary actions. (*Id.* at 8 ¶ 15.) He claims that this prevented him from preparing a defense to the charges against him; he was not offered counsel; requested witnesses were not called; and he was not given a statement of the reasons for the disciplinary decision. (*Id.* at ¶¶ 16-19.)

The Fourteenth Amendment provides, "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Astrue*, 545 U.S. 209, 221 (2005); *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

In analyzing the procedural safeguards owed to an inmate under the Due Process Clause

of the Fourteenth Amendment, the court considers two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected interest; and (2) whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'...or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson*, 545 U.S. at 221 (internal citations and parenthetical omitted).

Assuming a liberty interest is implicated, when an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of charges; (2) at least twenty-four (24) hours between the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally complex.[3] *Wolff*, 418 U.S. at 556.

Defendants argue that the Carson City Detention Facility mandates procedural safeguards consistent with *Wolff*. (42 Doc. # 62 at 29-30.) Specifically, the regulations provide that if a rule violation occurs, and a supervisor recommends disciplinary action, the report is given to the inmate, who is given an opportunity to request a hearing. (*Id.* at 29, 42 Doc. # 62-1 (Ex. 21) at ¶ 18.) Upon requesting a hearing, the inmate is given a minimum of twenty-four (24) hours to prepare, and the inmate will have the right to be present and to present witnesses and evidence in his defense. (*Id.* at 30.) The inmate is advised of the hearing board's decision, in writing, within seventy-two (72) hours. (*Id.*) If the inmate is found guilty, the board may impose appropriate disciplinary measures. (*Id.*) The inmate may appeal the decision. (*Id.*)

According to Defendant Fair, these procedural safeguards were followed in each and

---

[3] Inmates are not entitled to the aid of trained legal counsel. *Wolff*, 418 U.S. at 591-92, n. 2 ("There is considerable force to the argument that counsel on either side would be out of place in these disciplinary proceedings, and the practical problems of providing appointed counsel in these proceedings may well be insurmountable.").

1   every one of Plaintiff's rule violations, except where Plaintiff was simply given a verbal warning

2   and no disciplinary action was taken. (42 Doc. # 62-1 (Ex. 21) at ¶ 19.)

3          The only evidence Plaintiff has provided in response to Defendants' motion is the

4   statement in his affidavit that he was not permitted access to disciplinary policy/regulations

5   concerning the disciplinary process.(Doc. # 81 at 42 ¶ 16.) Familiarizing inmates with the

6   disciplinary policy regulations is not one of the procedural requirements set forth under *Wolff*.

7   Moreover, Plaintiff provides no specific factual evidence validating his allegations regarding

8   the asserted procedural violations.  Plaintiff has failed to raise a genuine issue of material fact.

9   Accordingly, summary judgment should be granted as to Count 2.

10  **B.  Case 3:09-cv-00109-LRH (WGC)**

11         **1.  Count 7**

12         Count 7 is asserted against Defendant Hindelang only. (*See* 109 Doc. # 5 at 5-7, 13, 109

13  Doc. # 26 at 3.) Plaintiff alleges that on November 18, 2008, Defendant Hindelang confiscated

14  medical orders from Plaintiff and prevented him from obtaining medical treatment specifically

15  ordered by a doctor. (109 Doc. # 6 at 14.) Defendant Hindelang answered Plaintiff's Complaint

16  on July 17, 2010 (109 Doc. # 28), but has not moved for summary judgment.  It appears that

17  Defendant Hindelang is represented by the same counsel as Defendants Fair, Wall, and

18  Furlong, so it is not entirely clear why Defendant Hindelang did not move for summary

19  judgment on his own behalf as to Count 7. Because Count 7 is not asserted against them,

20  Defendants Fair, Wall, and Furlong have no basis to move for summary judgment. Accordingly,

21  Defendants' motion should be denied as to Count 7 in Case 3:09-cv-00109-LRH (WGC).

22         **2.  Counts 8, 12, 13, and 14**

23         Count 8 alleges that Plaintiff's Eighth Amendment right was violated when Doe

24  defendants were deliberately indifferent to his serious medical need. (109 Doc. # 6 at 15.)  In

25  Count 12, Plaintiff alleges that his Eighth Amendment rights were violated in connection with

26  the conditions of his confinement in a safety cell on November 21, 2008. (*Id.* at 19.)  Count

27  13 alleges a denial of the physician/patient privilege. (*Id.* at 20.) Count 14 alleges deliberate

28  indifference to a serious medical need in violation of the Eighth Amendment. (*Id.* at 21.)

14

As with Count 7, Defendants Fair, Wall, and Furlong move for summary judgment as to these counts even though they are not named as defendants therein. Counts 8, 12, 13, and 14 were only allowed to proceed as to the Doe defendants. (*See* 109 Doc. # 5 at 13, 109 Doc. # 26 at 3.) None of the Doe defendants have been identified. Accordingly, Defendants' Fair, Wall, and Furlong's motion to dismiss Counts 8, 12, 13, and 14 in Case 3:09-cv-00109-LRH (WGC) should be denied.

This Complaint was screened for the second time on June 17, 2010. (109 Doc. # 26.) Therefore, under Federal Rule of Civil Procedure 4(m), Plaintiff had one hundred twenty (120) days, or until October 15, 2010, to identify and serve the Doe defendants**.** Fed. R. Civ. P. 4(m). Plaintiff has yet to identify and serve these Doe defendants. Plaintiff should be given **thirty (30) days** from the date of acceptance or rejection of this Report and Recommendation by the District Judge within which to identify and serve these Doe defendants or show good cause for failure to do so under Rule 4(m). If Plaintiff fails to identify and serve these Doe defendants, and fails to establish good cause for his failure to serve them, they should be dismissed.

## C.  Case 3:09-cv-110-LRH (WGC)

### 1.  Counts 2 and 7 (Defendants Fair, Wall, and Sgt.  Does 1-4 and Deputy Does 1-4)

In Counts 2 and 7, Plaintiff alleges due process violations in two separate time-frames because he was placed in an isolation cell as a disciplinary sanction for alleged rule violations. (110 Doc. # 15 at 10-11, 16.) He contends he was denied fair notice of the charges against him, denied substitute counsel to assist with his defense, denied witnesses, refused an impartial hearing officer, and denied a written statement of the decision. (*Id*.) Counts 2 and 7 of 3:09-cv-00110-LRH (WGC) are largely duplicative of Count 2 in 3:09-cv-00042-LRH (WGC). The court incorporates the legal standard and analysis set forth with respect to that claim here. As with Count 2 in 3:09-cv-00042-LRH (WGC), the court finds that Plaintiff has failed to raise a genuine issue of material fact to preclude summary judgment. Instead, the evidence before the court indicates that Plaintiff was provided with all required procedural protections.

1  Accordingly, summary judgment should be granted as to these claims against Defendants Fair
2  and Wall.

3           With respect to Sgt. Does 1-4 and Deputy Does 1-4, Plaintiff has yet to identify and serve
4  these defendants. Plaintiff had one hundred twenty (120) days, or until February 16, 2011,
5  within which to identify and serve these Doe defendants, under Federal Rule of Civil Procedure
6  4(m). Plaintiff should be given **thirty (30) days** from the date of acceptance or rejection of
7  this Report and Recommendation by the District Judge within which to identify and serve these
8  Doe defendants or show good cause for failure to do so under Rule 4(m). If Plaintiff fails to
9  identify and serve these Doe defendants, and fails to establish good cause as to why they were
10 not served, they should be dismissed.

11          **2.  Count 5 (Defendant Ramsey and Does # 2 and # 3)**

12          In Count 5, Plaintiff alleges that Defendant Ramsey and Does # 2 and # 3 were
13 deliberately indifferent to his serious medical need in violation of the Eighth Amendment. (110
14 Doc. # 15 at 14.) Defendant Ramsey filed an Answer to Plaintiff's Amended Complaint on
15 February 25, 2011.  (110 Doc. # 29.) Defendant Ramsey has not moved for summary judgment
16 as to Count 5. Again, it appears that Defendant Ramsey is represented by the same counsel as
17 Defendants Fair, Wall, and Furlong, so it is not clear why he did not move for summary
18 judgment on his own behalf. Defendants Fair, Wall, and Furlong have basis to move for
19 summary judgment on a claim in which they are not named a defendant. Accordingly,
20 Defendants Fair, Wall, and Furlong's motion for summary judgment should be denied as to
21 Count 5 in Case 3:09-cv-00110-LRH (WGC).

22          With respect to Does # 2 and # 3, Plaintiff has yet to identify and serve these defendants.
23 Plaintiff had one hundred twenty (120) days, or until February 16, 2011, within which to
24 identify and serve these Doe defendants, under Federal Rule of Civil Procedure 4(m). Plaintiff
25 should be given **thirty (30) days** from the date of acceptance or rejection of this Report and
26 Recommendation by the District Judge within which to identify and serve these Doe
27 defendants or show good cause for failure to do so under Rule 4(m). If Plaintiff fails to identify
28 and serve these Doe defendants, and fails to establish good cause as to why they were not

16

1  served, they should be dismissed.

2  ### IV. RECOMMENDATION

3  **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

4  (1) **DISMISSING WITH PREJUDICE Count 12** in **3:09-cv-00110-LRH (WGC);**

5  (2) **DISMISSING WITH PREJUDICE Count 10** in **3:09-cv-00110-LRH (WGC);**

6  (3) **GRANTING** summary judgment as to **Count 1** in **3:09-cv-00042-LRH (WGC)**;

7  (4) **GRANTING** summary judgment as to **Count 2** in **3:09-cv-00042-LRH (WGC)**;

8  (5) **GRANTING** summary judgment as to **Count 2** in **3:09-cv-00110-LRH (WGC)**

9  (6) **GRANTING** summary judgment as to **Count 7** in **3:09-cv-00110-LRH (WGC)**;

10  (7) **DENYING** summary judgment as to **Count 7** in **3:09-cv-00109-LRH (WGC)**;

11  (8) **DENYING** summary judgment as to Counts **7, 8, 12, 13, and 14** in **3:09-cv-00109-**
12  **LRH (WGC)**;

13  (9) **DENYING** summary judgment as to **Count 5** in **3:09-cv-00110-LRH (WGC)**; and

14  (10) With respect to the Doe defendants named in **Counts 7, 8, 12, 13, and 14** in **3:09-cv-**
15  **00109-LRH (WGC)** and **Counts 2, 5** and **7** in **3:09-cv-00110-LRH (WGC)**, Plaintiff
16  should be given **thirty (30) days** from the date of acceptance or rejection of this Report and
17  Recommendation by the District Judge within which to identify and serve these Doe
18  defendants or show good cause for failure to do so under Rule 4(m). If Plaintiff fails to identify
19  and serve these Doe defendants, and fails to establish good cause as to why they have not been
20  served, they should be dismissed.[4]

21  The parties should be aware of the following:

22  1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the
23  Local Rules of Practice, specific written objections to this Report and Recommendation within
24  fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate
25  Judge's Report and Recommendation" and should be accompanied by points and authorities

---

27  [4] Because the court recommended granting summary judgment as to each of the claims asserted against
moving Defendants Fair, Wall, and Furlong, it need not reach Defendants' arguments concerning qualified
28  immunity and punitive damages. The court will set a status conference regarding the claims that remain
as to Defendants Hindelang and Ramsey.

1    for consideration by the District Court.

2         2.      That this Report and Recommendation is not an appealable order and that any

3    notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

4    District Court's judgment.

5         DATED: February 2, 2012

6

7

8                                        _____
                                          WILLIAM G.  COBB
9                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          18