1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8    SCOTTIE RAY VAN NORT,                    )        3:09-cv-00042-LRH (WGC)
                                              )
9              Plaintiff,                     )
          vs.                                 )
10                                            )
     GLEN FAIR, et. al.,                      )
11                                            )
               Defendants.                    )
12   SCOTTIE RAY VAN NORT                      )        3:09-cv-00109-LRH (WGC)
                                              )
13             Plaintiff,                     )
                                              )
14        vs.                                 )
                                              )
15   RICK ASHER, et. al.,                     )
                                              )
16   SCOTTIE RAY VAN NORT,                     )        3:09-cv-00110-LRH (WGC)
                                              )
17             Plaintiff,                     )
                                              )
18        vs.                                 )        **REPORT & RECOMMENDATION**
                                              )        **OF U.S. MAGISTRATE JUDGE**
19                                            )
     GLEN FAIR, et. al.                        )
20                                            )
               Defendants.                    )
21   _____

22        This Report and Recommendation is made to the Honorable Larry R.  Hicks, United

23   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

24   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  On February 2, 2012,

25   the court issued a Report and Recommendation regarding defendants Fair, Wall, and Furlong's

26
27
28

1   Motion for Summary Judgment (42 Doc. # 62).[1] (*See* Report & Recommendation (42 Doc. #
2   83).) The court recommended that Defendants' motion be granted in part and denied in part.
3   (*Id*.) Summary judgment was recommended as to all claims asserted against defendants Fair,
4   Wall, and Furlong, but not as to those claims asserted only against Doe defendants, who were
5   not identified, or against defendants Hindelang and Ramsey, who had not moved for summary
6   judgment. (*Id*., n. 2.)

7       On April 2, 2012, the District Court entered an order adopting the Report and
8   Recommendation insofar as it addressed defendants Fair, Wall and Furlong, but denied the
9   recommendation with respect to defendants Ramsey and Hindelang. (42 Doc. # 85 at 2.) The
10  District Court found that due to an oversight by defense counsel in captioning the motion to
11  reflect those defendants who were moving for summary judgment, the court did not address
12  the claims against Ramsey and Hindelang. (*Id*.) Accordingly, the District Court remanded the
13  matter so that the claims asserted against defendants Ramsey and Hindelang could be
14  addressed on the merits. (*Id*.)

15      The court now provides the instant Report and Recommendation addressing the counts
16  asserted against defendants Ramsey and Hindelang, as well as Plaintiff's failure to identify and
17  serve the Doe defendants.

18                          **I. BACKGROUND**

19      Plaintiff Scottie Ray Van Nort (Plaintiff), is an inmate in custody of the Nevada
20  Department of Corrections (NDOC); however the events giving rise to this action took place
21  while Plaintiff was housed at the Carson City Detention Facility. (Pl.'s Am. Compl. (42 Doc. #
22  16) at 1; Pl.'s Compl. (109 Doc. # 6) at 1; Pl.'s Am. Compl. (110 Doc. # 15) at 1.) Plaintiff is
23  proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C.
24  § 1983. (*Id*.)

25      On April 22, 2011, Case Nos. 3:09-cv-00042-LRH (WGC), 3:09-cv-00109-LRH (WGC),
26  and 3:09-cv-00110-LRH (WGC) were consolidated. (*See* 42 Doc. # 30.) A combined twelve

27
28          [1] Refers to the court's docket number.  For clarification, when the court is referring to a docket item in
    Case 3:09-cv-00042-LRH (WGC) it will refer to the docket as "42 Doc. # X." For Case 3:09-cv-00109-LRH
    (WGC), it will refer to "109 Doc. # X," and for 3:09-cv-00110-LRH (WGC), it will refer to "110 Doc. # X."

1   counts survived screening: Counts 1 and 2 in 3:09-cv-00042-LRH (WGC), Counts 7, 8, 12, 13,

2   and 14 in 3:09-cv-00109-LRH (WGC), and Counts 2, 5, 7, 10, and 12 in 3:09-cv-00110-LRH

3   (WGC).  (*See* 42 Doc. # 15; 109 Doc. # 5; 109 Doc. # 26; 110 Doc. # 14.)

4       In 3:09-cv-00042-LRH (WGC), summary judgment was granted as to Counts 1 and 2.

5   (*See* Doc. # 85 at 3.) In 3:09-cv-00109-LRH (WGC), with respect to the Doe defendants named

6   in Counts 7, 8, 12, 13, and 14, Plaintiff was ordered to comply with service requirements under

7   Federal Rule of Civil Procedure 4(m) or those  Doe defendants would be dismissed. (*Id.*)

8   Counts 7, 8, 12, 13, and 14 in 3:09-cv-00109-LRH (WGC) are the subject of the instant Report

9   and Recommendation insofar as they are asserted against defendants Hindelang and Ramsey.

10  (*Id.*) In 3:10-cv-00110-LRH (WGC), summary judgment was granted as to Counts 2 and 7, and

11  Counts 10 and 12 were dismissed with prejudice.  (*Id.*) Count 5 of 3:09-cv-00110-LRH (WGC)

12  is also the subject of the instant Report and Recommendation. (*Id.*)

13      Plaintiff has not identified and served the Doe defendants pursuant to the District

14  Court's Order (42 Doc. # 85 at 3); therefore, it is recommended that the Doe defendants be

15  dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

16                                   **II. LEGAL STANDARD**

17      "The purpose of summary judgment is to avoid unnecessary trials when there is no

18  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

19  18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in

20  favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing

21  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

22  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

23  there is no genuine issue as to any material fact and that the movant is entitled to judgment as

24  a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the

25  material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

26  at 250.

27      The moving party bears the burden of informing the court of the basis for its motion,

28  together with evidence demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*  at 248.

In determining summary judgment, a court applies a burden shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ]  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec.  Indus.  Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

4

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

## III. DISCUSSION

**A. Case 3:09-cv-00109-LRH (WGC)**

    **1. Count 7**

        **a. Summary of claim and argument**

Count 7 is asserted against Defendant Hindelang only. (*See* 109 Doc. # 5 at 5-7, 13; 109 Doc. # 26 at 3.) Plaintiff alleges that on November 18, 2008, Defendant Hindelang confiscated medical orders (a kite for crackers) from Plaintiff and prevented him from obtaining medical treatment specifically ordered by a doctor to avoid stomach upset. (109 Doc. # 6 at 14.)

Defendants argue that Plaintiff cannot adduce any evidence establishing a violation of his Eighth Amendment rights. (42 Doc. # 62 at 12.) Specifically, they assert that there is no evidence that Plaintiff was subjected to an excessive risk to his health. (*Id*.) They assert that withholding medically authorized snacks meant to minimize possible stomach upset does not rise to the level of a serious medical need. (*Id*. at 13.) Additionally, Defendants argue that on November 3, 2008, Plaintiff's medically authorized snacks were discontinued pursuant to orders from medical staff because it had been reported that Plaintiff was refusing his prescribed

1    medication in order to manipulate his extra food portions.  (*Id*.)

2        Plaintiff, on the other hand, argues that defendant Hindelang's actions were malicious

3    and vindictive, and caused Plaintiff additional pain and suffering. (42 Doc. # 81 at 3.)

4        **b.  Standard**

5        The rights of pretrial detainees are governed by the Fourteenth Amendment, *see Bell v.*

6    *Wolfish*, 441 U.S. 520 (1979); however, courts borrow from the Eighth Amendment when

7    analyzing alleged constitutional deprivations. *See Pierce v. County of Orange*, 526 F.3d 1190,

8    1205 (9th Cir.  2008).  The Fourteenth Amendment "imposes, at a minimum, the same duty

9    the Eighth Amendment imposes: persons in custody have the established right to not have

10   officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of*

11   *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  Thus, Eighth Amendment standards are utilized

12   in evaluating medical care claims brought by pretrial detainees.  *See Lolli v. County of Orange*,

13   351 F.3d 410, 419 (9th Cir.  2003).

14       A prisoner can establish an Eighth Amendment violation arising from deficient medical

15   care if he can prove that prison officials were deliberately indifferent to a serious medical need.

16   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The requirement of deliberate indifference is less

17   stringent in cases involving a prisoner's medical needs than in other cases involving harm to

18   incarcerated individuals because '[t]he State's responsibility to provide inmates with medical

19   care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*,

20   974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104

21   F.3d.  1133 (9th Cir.  1997).  "In deciding whether there has been deliberate indifference to an

22   inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors

23   or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.  1989).

24       A finding of deliberate indifference involves the examination of two elements: "the

25   seriousness of the prisoner's medical need and the nature of the defendant's responses to that

26   need." *McGuckin v. Smith*, 974 F.2d at 1059.  "A 'serious' medical need exists if the failure to

27   treat a prisoner's condition could result in further significant injury or the 'unnecessary and

28   wanton infliction of pain.'" *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are

6

"serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also Snow v. McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981)

7

1    (difference of opinion between a prisoner-patient and medical staff regarding treatment is not

2    cognizable under § 1983). To establish that a difference of opinion amounted to deliberate

3    indifference, the inmate "must show that the course of treatment the doctors chose was

4    medically unacceptable under the circumstances" and that the course of treatment was chosen

5    "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*,

6    90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow*, 681 F.3d at 988 (quoting

7    *Jackson*, 90 F.3d at 332) (finding that "a reasonable jury could conclude that the decision of

8    the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery

9    was medically unacceptable under the circumstances").

10                **c. Analysis**

11           Plaintiff's medical records reflect that on November 3, 2008, Plaintiff was reported as

12    stating that he was angry about his housing situation and lack of extra food, and refused

13    antibiotics to manipulate his extra food portions. (42 Doc. # 62-1 at 2.) As a result, Plaintiff's

14    medication was discontinued by defendant Ramsey. (*Id.* at 4, 6.)

15           In his medical kite on this issue, Plaintiff stated: "I will in the interest of health take the

16    medication tonight without benefit of food and suffer the side effect so easily avoidable merely

17    because security finds it inconvenient." (42 Doc. # 62-1 at 8.) In response, staff responded,

18    "Dr. Ramsey discontinued these meds due to your refusal to take them." (*Id.*).

19           There is simply no evidence that defendant Hindelang was deliberately indifferent to

20    Plaintiff's serious medical needs. Even assuming that stomach upset as a result of not being

21    provided crackers with medication rises to the level of a serious medical need, there is no

22    evidence that defendant Hindelang knew or and disregarded an *excessive risk* to Plaintiff's

23    health. Instead, the evidence demonstrates that Plaintiff's medication was discontinued by

24    *defendant Ramsey* because Plaintiff refused to take it. In the absence of any evidence that

25    defendant Hindelang acted with deliberate indifference, summary judgment should be granted

26    in his favor.

27          **2. Count 8**

28           Count 8 alleges that Plaintiff's Eighth Amendment rights were violated when defendants

were deliberately indifferent to his serious medical need. (109 Doc. # 6 at 15.) Plaintiff avers that Doe defendants #3, # 4, and # 5, between November 19, 2008, and November 21, 2008, subjected Plaintiff to medical treatment other than that specifically ordered by a physician or disrupted his medical treatment causing pain and suffering. (*Id.*) Specifically, Plaintiff asserts that these Doe defendants withheld medically authorized snacks which were to accompany his medication in order to avoid stomach upset. (*Id.*) Plaintiff goes on to allege that Doe defendant sergeants # 2, # 3, and # 4 chose to ignore and failed to investigate Plaintiff's claims of deficient medical care. (*Id.*)

On screening, the court allowed this claim to proceed only as to the Doe defendants, and stated that it would be revisited once the Doe defendants were identified. (109 Doc. # 5 at 7-8.) As indicated above, because Plaintiff has not identified the Doe defendants, this claim should be dismissed without prejudice.

### 3. Count 12

In Count 12, Plaintiff alleges that his Eighth Amendment rights were violated in connection with the conditions of his confinement in a safety cell on November 21, 2008. (109 Doc. # 6 at 19.) The only allegations that remain with respect to this claim are directed towards Doe defendants. (*Id.*) As with Count 8, this claim should be dismissed without prejudice.

### 4. Count 13

Count 13 alleges a denial of the physician-patient privilege. (109 Doc. # 6 at 20.) Plaintiff alleges that on November 21, 2008, Defendant Ramsey violated Plaintiff's right to confidentiality by allowing a consultation/examination to take place at the booking desk in front of four witnesses, by allowing it to be recorded by security cameras, and by permitting Sergeant Fair to become part of the conversation over Plaintiff's protests. (*Id.*)

On screening, the court found that Plaintiff states a colorable claim for violation of the doctor-patient privilege. (109 Doc. # 5 at 10-11.) Upon further review, the court has determined that it erred in allowing Plaintiff to proceed with a cause of action for violation of the physician-patient privilege.

1

2

The common law- as interpreted by United States courts in the light of reason and experience-governs a claim of privilege unless any of the following provides otherwise:
• The United States Constitution;

3

• a federal statute; or
• rules prescribed by the Supreme Court.

4

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

5

Fed. R. Evid. 501.

6

A privilege is "a rule that gives a person a right to refuse to disclose information to a

7

tribunal that would otherwise be entitled to demand and make use of that information in

8

performing its assigned function." 23 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5422

9

(1st ed. 2012). There is not a federally recognized physician-patient privilege in a federal

10

question case. *Id.* at §§ 5521-22; *see also Whalen v. Roe*, 429 U.S. 589, 602 n. 28 (1977); *In*

11

*re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir. 1989), *abrogated on other grounds*

12

*by Jaffee v. Redmond*, 518 U.S. 1 (1996) (recognizing a federal psychotherapist-patient

13

privilege); *Soto v. City of Concord*, 162 F.R.D. 603, 618 (9th Cir. 1995) ("physician-patient

14

privilege does not exist at federal common law and the Ninth Circuit has not recognized a

15

physician-patient privilege"); *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 367

16

n. 10 (9th Cir. 1992) ("in federal question cases with pendant state law claims, the law of

17

privilege is governed by the principles of the common law as they may be interpreted by the

18

courts of the United States in light of reason and experience").) Therefore, Plaintiff has not

19

stated a claim for violation of the physician-patient privilege.

20

To the extent Plaintiff's claim can be construed as asserting a breach of the physician's

21

duty of confidentiality, he does not have a private right of action. *See, e.g., Miller v. McDaniel*,

22

124 Fed.Appx. 488, 490 (9th Cir. 2005) (citing Nev. Rev. Stat. 49.215, 49.225, *Ashokan v.*

23

*State Dep't of Ins.*, 856 P.2d 244, 248 (Nev. 1993), 109 Nev. 662). Moreover, if Plaintiff is

24

attempting to assert a claim under the Health Insurance Portability and Accountability Act of

25

1996 (HIPPA), he fails to state a claim because "HIPPA itself provides no private right of

26

action." *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010), *cert. denied*, *Seaton v.*

27

*Mayberg*, 131 S.Ct. 1534 (Feb. 22, 2011).

28

Accordingly, summary judgment should be entered in favor of defendant Ramsey as to

10

1    Count 13.

2         **5. Count 14**

3         Count 14 alleges deliberate indifference to a serious medical need. (109 Doc. # 6 at 21.)

4    Plaintiff alleges that on November 21, 2008, defendant Ramsey subjected Plaintiff to

5    interference with treatment he had ordered by failing to ensure that his orders were accurately

6    recorded. These allegations, insofar as they concern defendant Ramsey, are duplicative of those

7    asserted against defendant Hindelang in Count 7.

8         The court finds, as it did with respect to defendant Hindelang in Count 7, that there is

9    no evidence of deliberate indifference.  Instead, the evidence demonstrates that the order was

10   discontinued as a result of Plaintiff's failure to take his medication.  Accordingly, summary

11   judgment should be granted in favor of defendant Ramsey.

12   **B. Case 3:09-cv-110-LRH (WGC)**

13        **2. Count 5**

14        In Count 5, Plaintiff alleges that Defendant Ramsey was deliberately indifferent to his

15   serious medical need because he failed to ensure his orders with respect to tooth pain were

16   understood and executed. (110 Doc. # 15 at 14.)

17        Plaintiff first broke his tooth in jail between June 3 and June 17, 2008, but was released

18   before he could be seen by medical staff. (42 Doc. # 62 at 15; 42 Doc. # 62-1 at 13-14 (Van Nort

19   Depo. Trans.) 71:14-72:15.) Over the next five months, Plaintiff was arrested and released on

20   four occasions. (*Id*. at 13-15, 71:14-81:11-25.)

21        On October 13, 2008, when Plaintiff was back in custody, he was seen with complaints

22   of left lower tooth pain, and reported that he was refusing to eat because of the way he was

23   being treated. (42 Doc. # 62-1 at 22.)  He was instructed that he had to eat so that he could be

24   prescribed medication, and that the tooth could not be pulled until he started eating. (*Id*.) On

25   October 14, 2008, Plaintiff responded that he would have to be taken to the hospital because

26   he refused to eat.  (*Id*. at 24.) On October 15, 2008, Plaintiff threatened to starve himself to

27   make his stay very expensive and to get himself to the hospital.  (*Id*. at 36.) As of October 17,

28   2008, Plaintiff reported that he had not eaten for the last seven days to prove a point to the

1   facility.  (*Id.* at 26.)  He also refused a multi-vitamin offered by defendant Ramsey. (*Id.*)

2       On October 20, 2008, Plaintiff was still maintaining his hunger strike, and said he would

3   not eat until he was force fed.  (42 Doc. # 62-1 at 28.)  Plaintiff reiterated this on October 21

4   and 23, 2008. (*Id.* at 30, 32.) He was advised by defendant Ramsey that his failure to eat would

5   result in his body shutting down. (*Id.* at 32.) Plaintiff completed a urinalysis test for defendant

6   Ramsey on October 27, 2008, revealing signs of starvation but no infection. (*Id.* at 34.)

7       By October 30, 2008, Plaintiff developed an infection in a rear lower tooth, and medical

8   staff presented Plaintiff with antibiotics and told him they would call Mountain Dental for an

9   appointment to have his tooth removed.  (42 Doc. # 62 at 15; 42 Doc. # 62-1 at 20.)  By

10  November 3, 2008, Plaintiff had ended his hunger strike, but was refusing to take antibiotics

11  or pain medication prescribed for his tooth pain. (42 Doc. # 62 at 16; 42 Doc. # 62-1 at 2.)  The

12  tooth was eventually extracted on January 28, 2009.  (42 Doc. # 62 at 16; 42 Doc. # 62-1 at 16-

13  17 Ex. 6 (Van Nort Depo.  Trans.) 88:23-89:25.)

14      The court agrees with defendant Ramsey that there is no evidence of deliberate

15  indifference. Assuming that Plaintiff's tooth condition qualifies as a serious medical condition,

16  there is simply no evidence to suggest that defendant Ramsey knew of and disregarded an

17  excessive risk to Plaintiff's health. Instead, the evidence before the court establishes that

18  defendant Ramsey continually tried to provide Plaintiff with care for his tooth pain, but was

19  met with resistance from Plaintiff, in the form of Plaintiff's self-imposed hunger strike and his

20  refusal to take prescribed pain medication.

21      As a result, summary judgment should be granted in defendant Ramsey's favor as to

22  Count 5 in 3:09-cv-00110-LRH (WGC).

23                          **IV. RECOMMENDATION**

24      **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

25      **(1) <u>DISMISSING WITHOUT PREJUDICE</u>** the Doe defendants named in 3:09-cv-

26  00109-LRH (WGC);

27      **(2) <u>GRANTING SUMMARY JUDGMENT</u>** in favor of defendant Hindelang in Count

28  7 of 3:09-cv-00109-LRH (WGC);

                              12

1    **(3) DISMISSING WITHOUT PREJUDICE** Count 8 in 3:09-cv-00109-LRH (WGC)

2    as the allegations contained therein are only directed toward Doe defendants;

3    **(4) DISMISSING WITHOUT PREJUDICE** Count 12 in 3:09-cv-00109-LRH (WGC)

4    as the allegations contained therein are only directed toward Doe defendants;

5    **(5) GRANTING SUMMARY JUDGMENT** as to defendant Ramsey in Count 13 of

6    3:09-cv-00109-LRH (WGC);

7    **(6) GRANTING SUMMARY JUDGMENT** as to defendant Ramsey in Count 14 of

8    3:09-cv-00109-LRH (WGC); and

9    **(7) GRANTING SUMMARY JUDGMENT** as to defendant Ramsey in Count 5 of

10   3:09-cv-00110-LRH (WGC).

11   The parties should be aware of the following:

12   1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

13   Local Rules of Practice, specific written objections to this Report and Recommendation within

14   fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

15   Judge's Report and Recommendation" and should be accompanied by points and authorities

16   for consideration by the District Court.

17   2.    That this Report and Recommendation is not an appealable order and that any

18   notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

19   District Court's judgment.

20   DATED: July 18, 2012

23   _____
     WILLIAM G.  COBB
24   UNITED STATES MAGISTRATE JUDGE

13